IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN C. PALMER,** | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 1:CV-04-1055 |
| | : | |
| v. | : | **(Judge Rambo)** |
| | : | |
| **DAUPHIN COUNTY PRISON,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **M E M O R A N D U M**

### **I.       Introduction**

Plaintiff, Shawn Palmer, an inmate at the State Correctional Institution at Coal Township, Pennsylvania, commenced this *pro se* action with a civil rights complaint filed pursuant to the provisions of 42 U.S.C. §1983. Named as Defendants are Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania, as well as the following DCP officials: (1) Warden Dominick DeRose; (2) Deputy Wardens James M. DeWees and Elizabeth Nichols; (3) Treatment Evaluator Michele Jiszenka; (4) Head Nurse Tom Toolen;[1] and (5) Dr. Jane Doe. Plaintiff alleges mistreatment by Defendants while he was previously incarcerated at DCP, and he claims "denial of adequate medical

---

[1] Although misidentified as Tom "Tullen" in the complaint (Doc. 1) and Tom "Tuller" in the supplemental complaint (Doc. 42), the docket has now been corrected to properly identify this Defendant as Tom "Toolen." *See* Doc. 52.

treatment and care, cruel and unusual punishment, deliberate indifference, wanton and unnecessary infliction of emotional distress, gross negligence, mental anguish, denied access to the courts, professional incompetence, subordinate [sic], deprivation of character, due process and equal protection of the law." (Doc. 1 at 2.) Thereafter, Plaintiff filed a supplemental complaint (Doc. 42) alleging further acts of mistreatment by Defendants during a short return to DCP. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees.

Presently before the Court is: (a) the "Jane Doe"[2] Defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. 19); (b) Tom Toolan's motion to dismiss or, in the alternative, for summary judgment (Doc. 34); and (c) the motion for summary judgment (Doc. 15) filed by Dominick DeRose, James DeWees, Michelle Jeszenka and Deputy Nichols ("corrections Defendants"). The motions have been briefed, and they are ripe for disposition. For the following reasons, the motions will be granted, and the complaint will be dismissed as it relates to DCP under 28 U.S.C. § 1915 .

---

[2]Fictitious or "Jane Doe" defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed. *Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). Defendants have identified the "Jane Doe" Defendant as Dr. "Marybeth Jackson." *See* Doc. 45.

**II.      Background**

Plaintiff challenges the sufficiency of his medical care he received while incarcerated at DCP from April 9, 2003 to June 26, 2003 (Doc. 1; Doc. 17, Ex. A) as well as from December 15, 2004 to December 22, 2004 (Doc. 42 at 2-3.)  During an intake medical screening at DCP on April 9, 2003, Plaintiff noted left leg weakness, precipitated by a gunshot wound he suffered in 2000, for which Plaintiff's private physician prescribed a metal cane to assist in ambulation.   (Doc. 17, Ex. B at 1.; Ex. C).  Plaintiff's medical history was conveyed by telephone to Dr. Jackson, and the doctor ordered: (a) bottom bunk/tier assignment for thirty (30) days; (b) use of one (1) crutch for thirty (30) days; and (c) referral to a physician's assistant for evaluation. (*Id*.)

Subsequently, Plaintiff was relocated within the prison several times,[3] and his crutch was taken from him by nurse Toolan after Plaintiff was observed walking without his crutch on May 8 and May 9, 2003.  He claims that these actions were retaliatory[4] (Doc. 1 at ¶¶ 14-15), for assistance he rendered to another inmate.  On May 14, 2003, after his crutch had been taken, Plaintiff slipped and fell while exiting

---

[3]Initially housed in "Classification Block" (Doc. 17, Ex. A at 8), Plaintiff was moved to L Block on April 12, 2003 (*Id*.; Doc. 17, Ex. D at 6), to M Block on May 6, 2003, and to Q Block on May 12, 2003.  (*Id.*)

[4]Other than this conclusory reference to "retaliation" in the complaint, Plaintiff has submitted no evidence to support such a claim.

3

the shower.  (*Id*. ¶ 17.)  Plaintiff was seen by medical personnel. (*Id*.)  He was prescribed Motrin for his reported head, back, neck and jaw pain (*Id*. ¶ 18) and his crutch was returned (*Id*. ¶ 22.)  Although Plaintiff requested x-rays, none were taken. (*Id*. ¶ 24.)

For the duration of his 2003 incarceration at DCP, Plaintiff made repeated complaints of head, back, and jaw pain, and he filed no fewer than twenty-seven (27) inmate request forms related to his malady.  (*Id*., Ex. D).  The record indicates that Plaintiff was seen by medical personnel no fewer than twenty-four (24) times in the period of April 9, 2003 through June 26, 2003, yet Plaintiff continued to challenge the sufficiency of treatment.  (*Id*., Exs. N and O).  This action ensued.

**III.    Legal Standard**

The Jane Doe Defendant, now identified as Dr. MaryBeth Jackson, and Tom Toolan have filed motions to dismiss or, in the alternative, for summary judgment (Docs. 19 and 34).  The motions to dismiss are based upon a contention that Plaintiff's complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon
> which relief can be granted, matters outside the

4

> pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

Fed. R. Civ. P. 12(b). The motions both incorporate by reference the statement of material facts not in dispute (Doc. 16) and the exhibits (Doc. 17) submitted by the corrections Defendants in support of their motion for summary judgment (*See* Doc. 20 at 2-3; Doc. 36 at 2-3). Since the court will not exclude the supplemental materials, and since Plaintiff has responded to the motions for summary judgment, the motions to dismiss will be construed as motions for summary judgment under Rule 12(b).

Accordingly, with the exception of DCP, all of the Defendants have filed motions for summary judgment. Under Federal Rule of Civil Procedure 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Additionally, on summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Mraz v. County of Lehigh,* 862 F. Supp. 1344, 1347 (E.D. Pa. 1994).

5

Moreover, Rule 56 provides that the adverse party may not simply sit back and rest on the allegations contained in the pleadings. Rather, the adverse party must show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). When addressing a summary judgment motion, our inquiry focuses on "whether *the evidence* presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52 (emphasis added).

## IV.     **Deliberate Indifference**[5]

To state a viable § 1983 claim, Plaintiff must establish (1) that the alleged wrongful conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Both elements must be present to sustain a § 1983 action, and Plaintiff fails to satisfy the second.

---

[5]Plaintiff also mentions denial of access to the courts, "subordinate [sic], deprivation of character, due process and equal protection of the law" in his complaint (Doc. 1 at 2), but he does not allege any facts supporting these claims. Accordingly, the court bases its decision solely on the arguments made and corresponding facts alleged by Plaintiff.

6

The Constitutional issue implicated in this case is the Eighth Amendment requirement that prison officials provide adequate medical care to inmates, and make reasonable efforts to assure prisoner health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That duty is violated when prison officials know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. Not every illness or injury enjoys constitutional protection; only serious medical needs or injuries will give rise to constitutional scrutiny. *Gerber v. Sweeney*, 292 F.Supp.2d 700, 706 (E.D. Pa. 2003). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *McCabe Prison Health Services*, 117 F.Supp. 2d 443, 450 (E.D. Pa. 1997).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), as here, the prisoner/plaintiff claimed that inadequate medical treatment violated his Eighth Amendment protection from cruel and unusual punishment. The Supreme Court acknowledged that the government has an obligation to provide medical care to its prisoners, but held that a constitutional violation does not occur unless the Plaintiff can show Defendants had a "deliberate indifference to serious medical needs of prisoners" which constitutes "unnecessary and wanton infliction of pain." *Id.* at 104 (citation omitted). Plaintiff

7

fails to establish that any of the Defendants were deliberately indifferent to serious medical needs.

### A.     Dr. Jackson and Tom Toolan

Plaintiff concedes that he received medical care for his pain, but he argues that Dr. Jackson and Tom Toolan ("medical Defendants") were deliberately indifferent because the prescribed pain medication did not work. (Doc. 1 at ¶ 16.) ("on May 13, 2003, Plaintiff informed prison medical personnel that . . . the [T]ylenol and [M]otrin are not working.") Assuming that Plaintiff's leg, neck, back, head, and jaw pain constituted a serious medical condition, Plaintiff fails to allege any facts that would establish deliberate indifference by the medical Defendants. A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.   If inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. *Id.*

Although there is no heightened pleading standard for § 1983 actions, *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004), the record is devoid of any evidence that Dr. Jackson or Tom Toolan were deliberately indifferent to Plaintiff's serious medical

8

needs. To the contrary, the record supports a conclusion that Plaintiff was treated by the medical Defendants for his pain and leg injury when requested.

In reference to Dr. Jackson, Plaintiff alleges that after his intake assessment, Dr. Jackson ordered lower bunk/tier placement and the use of a crutch, to accommodate Plaintiff's leg injury. Although Dr. Jackson later approved removal of the crutch from Plaintiff, Dr. Jackson's decision to remove Plaintiff's crutch does not amount to an Eighth Amendment violation, notwithstanding Plaintiff's assertion that his private physician had prescribed such a device. "[A]s long as a physician exercises professional judgment [her] behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). One doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). Moreover, although Plaintiff alleges that Dr. Jackson denied return of his crutch after his fall in the shower (Doc. 1 at ¶ 21), Dr. Jackson did return Plaintiff's crutch[6] and returned him to the prison's medical block (*Id.* at ¶ 22). Further, Plaintiff's claim that Dr. Jackson failed to order x-rays after his fall in the shower despite his repeated requests does not establish deliberate indifference. A "medical

---

[6] Although Plaintiff claims that the crutch was broken and lacked an arm pad, he does not provide any evidence that he informed the Defendants of the deficiencies and/or that Defendants refused to remedy the problem. (Doc. 1 at ¶ 23.)

9

decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107.  At best, Plaintiff's allegations against Dr. Jackson establish a dispute over diagnosis and treatment, but he does not present any evidence of a "substantial risk" to a "serious medical condition" caused by Dr. Jackson's treatment.

Plaintiff also alleges that prison nurse Tom Toolan instigated removal of the crutch in retaliation for Plaintiff's assistance to another inmate.  However, Plaintiff presents no evidence to support his bare assertion of retaliation,[7] and in his complaint he concedes that Toolan determined Plaintiff was "no longer in need of his cane and/or crutch" based upon his "personal observation of Plaintiff."  (Doc. 1 at ¶ 15.) This is confirmed and elaborated in the record. On June 28, 2003, Toolan wrote a memorandum to Plaintiff's attorney, Joshua Lock, in response to Lock's inquiries regarding Plaintiff's medical treatment.  In the memorandum, Toolan confirms that Corrections Officer Shumberger had observed Plaintiff walking without his crutch on May 8, 2003, and Toolan personally observed Plaintiff walking without his crutch on

---

[7]To prove retaliation, Plaintiff must demonstrate: (1) that he engaged in constitutionally protected conduct; (2) an adverse action by the Defendants sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  Plaintiff has failed to provided any evidence that the Defendants' actions would deter a "person of ordinary firmness, nor has he presented evidence of the requisite nexus (other than proximity in time), to sustain his retaliation claim.  Moreover, there is no authority cited, and the court is unaware of any, to support the proposition that Plaintiff has a Constitutional right to assist other inmates.

10

May 9, 2003. (Doc. 17, Ex. C). "[A]fter review of the medical record, the physician discontinued the use of a crutch." (*Id*.) However, the crutch was returned on May 14, 2003, after the shower fall. Ultimately, the record supports a conclusion that Toolan's removal of the cane was based upon his personal observation, as well as the observation of C.O.Shumberger, and Plaintiff has presented no evidence to suggest that Toolan's actions constituted retaliation or deliberate indifference to Plaintiff's serious medical needs.

### B.     **Corrections Defendants**

It is well-established that "[A] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondent superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988). The personal involvement requirement can be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." *Id.*; *Pansy v. Preate*, 870 F. Supp. 612, 630 (M.D. Pa. 1994), *aff'd mem.*, 61 F.3d 896 (3d Cir. 1995). Nevertheless, an official who actually knew of a substantial risk to inmate health or safety will not be liable where the official acted reasonably in response, even if the harm ultimately ensues. *Id*. at 844. Further, a non-physician defendant will not be liable for deliberate indifference where the inmate is receiving treatment by the prison's medical staff. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993).

Although Plaintiff infers that the corrections Defendants are liable in a

11

supervisory capacity (Doc. 1 at ¶ 9; "Defendant [Jackson] is also head of the complete medical department and it's [personnel]"), there is nothing in the complaint to implicate these Defendants in any acts of deliberate indifference to Plaintiff. Defendants have attached thirty (30) inmate request forms filed by Plaintiff while he was at DCP.  (Doc. 20, Ex. C).  Most, but not all, of the inmate requests relate to Plaintiff's complaints about the medical care.  However, the requests also typically contain a notation that some relief or altered medical attention was provided promptly in response to these complaints.  Thus, the record is devoid of evidence or an inference that the corrections Defendants knew of and disregarded a substantial risk to Plaintiff's serious medical condition, or that they knowingly acquiesced in any substandard treatment to Plaintiff.

### C.	Dauphin County Prison

As it relates to Dauphin County Prison, Plaintiff's complaint will be dismissed as legally frivolous under the Prison Litigation Reform Act ("PLRA"), pursuant to the provisions of § 1915(e)(2)(B)(i).  Plaintiff is proceeding *in forma pauperis*.  (*See* Doc. 9.)  The PLRA established new obligations for prisoners who file civil rights actions in federal court, and wish to proceed *in forma pauperis*.  Section 1915(e)(2) of the PLRA requires the court to dismiss "the case at any time if the court determines that . . . (B) the action or appeal --- (i) is frivolous . . . ."  28 U.S.C. §

1915(e)(2)(B)(i). This section applies equally to cases that are factually, as well as legally, frivolous. *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

An action is legally frivolous if it is based upon an indisputably meritless legal theory. *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which it is . . . readily apparent that the plaintiff's complaint lacks an arguable basis in law. . . ." *Roman v. Jeffes*, 904 F.2d 192, 194 (3d Cir. 1990). "[T]he frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

As previously noted, the Plaintiff must establish that the alleged wrongful conduct was committed by a state actor and that it deprived the plaintiff of a right under the Constitution or laws of the United States. *Nicini*, 212 F.3d at 806. Plaintiff fails to identify any conduct of DCP that has abridged a right or privilege of the Plaintiff. As with the other Defendants, under the most liberal interpretation, Plaintiff's allegations merely establish a difference in the course of treatment pursued by the prison medical staff and the treatment preferred by Plaintiff. Moreover, a non-physician defendant will not be liable for deliberate indifference where the inmate is receiving treatment by the prison's medical staff. *Durmer*, 991 F.2d at 69. Thus, as it relates to DCP, "it is . . . readily apparent that the plaintiff's complaint lacks an

13

arguable basis in law." *Roman*, 904 F.2d at 194.  Thus, the complaint will be dismissed as it relates to Dauphin County Prison.

## V.        **Conclusion**

Since Plaintiff has not established deliberate indifference or retaliation by Defendants, Defendants' motions for summary judgment will be granted, and the case will be dismissed against Dauphin County Prison under 28 U.S.C. § 1915(e)(2)(B)(i). An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated:  October 5, 2005.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHAWN C. PALMER,** : | |
| : | |
| **Plaintiff,** : | **CIVIL NO. 1:CV-04-1055** |
| : | |
| **v.** : | **(Judge Rambo)** |
| : | |
| **DAUPHIN COUNTY PRISON,** *et al.*, : | |
| : | |
| **Defendants.** : | |

## **O R D E R**

In accordance with the foregoing memorandum, **IT IS HEREBY ORDERED THAT**:

1) Dr. Marybeth Jackson's motion to dismiss or, in the alternative, for summary judgment (Doc. 19) is construed as a motion for summary judgment, and the motion is **GRANTED**.

2) Tom Toolan's motion to dismiss or, in the alternative, for summary judgment (Doc. 34) is construed as a motion for summary judgment, and the motion is **GRANTED**.

3) The motion for summary judgment filed by Dominick DeRose, James DeWees, Michelle Jeszenka, and Deputy Nichols (Doc. 15) is **GRANTED**.

    4)  The Plaintiff's complaint is **DISMISSED** as it relates to Dauphin County Prison, pursuant to 28 U.S.C. 1915(e)(2)(B)(i).

    5)  The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff, and the Clerk of Court shall mark this case closed.

    6)  Any appeal from this Order shall be deemed frivolous, without probable cause, and not taken in good faith.

                                        s/Sylvia H. Rambo
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated:  October 5, 2005.